IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA

KEVIN JOHNSON, NO. 185492,                                          Plaintiff,
V.
MARK WARNER, GOVERNOR, VIRGINIA,
    SERVE AT: STATE CAPITOL
                3RD FLOOR
                RICHMOND, VA. 23219
RONALD ANGELONE, DIRECTOR, VIRGINIA DEPARTMENT OF CORRECTIONS (VDOC) [PAST],
GENE JOHNSON, DIRECTOR, VDOC,
T. C. BROWN, OMBUDSMAN SERVICES MANAGER, VDOC,
INSPECTOR GENERAL, VDOC,
    SERVE AT: 6900 ATMORE DRIVE
                RICHMOND, VA. 23225

7:05-CV-00219

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
APR 15 2005
JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

TRACY RAY, WARDEN, RED ONION STATE PRISON (ROSP),
DANIEL BRAXTON, WARDEN, ROSP [PAST],
JERRY ARMENTROUT, ASSISTANT WARDEN, ROSP,
V. PHIPPS, NURSING DIRECTOR, ROSP,
TERIE PHIPPS, LICENSED PRACTICAL NURSE, ROSP,
STILTNER, LICENSED PRACTICAL NURSE, ROSP [PAST],
RICHARD ROWLETTE, SECURITY CHIEF, ROSP [PAST],
RICHARD FLEMING, SECURITY CHIEF, ROSP,
J. KISER, CAPTAIN PRISON GUARD, ROSP,
DEWAYNE TURNER, PRISON GUARD LIEUTENANT, ROSP,
RONALD FOWLER, PRISON GUARD LIEUTENANT, ROSP,
SMIDDY HARRISON, PRISON GUARD LIEUTENANT, ROSP,
KEVIN McCOY, PRISON GUARD LIEUTENANT, ROSP,
LARRY COX, PRISON GUARD, LIEUTENANT, ROSP,
J. ROBINSON, PRISON GUARD LIEUTENANT, ROSP,
RICHARD ROSE, PRISON GUARD LIEUTENANT, ROSP,
J. HILLYER, PRISON GUARD SERGEANT, ROSP [PAST],
DANNY DAMRON, PRISON GUARD, ROSP, SERGEANT,
SCOTTY DEEL, PRISON GUARD SERGEANT, ROSP,
GREGORY CHILDRESS, PRISON GUARD SERGEANT, ROSP,
TRAVIS McCOY, PRISON GUARD SERGEANT, ROSP,
DELMER TATE, PRISON GUARD SERGEANT, ROSP,
G. KENDRICK, PRISON GUARD SERGEANT, ROSP,
JOHN WOOD, PRISON GUARD, SERGEANT, ROSP,
DANIEL McGOWAN, PRISON GUARD, ROSP,
M. FLEMING, PRISON GUARD, ROSP,
RANDALL CANTRELL, PRISON GUARD, ROSP,
LARRY COLLINS, PRISON GUARD, ROSP,
G. MULLINS, PRISON GUARD, ROSP [PAST],
MULLINS, PRISON GUARD, ROSP,
D. TILLER, PRISON GUARD, ROSP,
S. WHITE, PRISON GUARD, ROSP [PAST],
W. SYKES, PRISON GUARD, ROSP,
E. FLEMING, PRISON GUARD, ROSP [PAST],
JOSEPH RASNICK, PRISON GUARD, ROSP,
KEITH COUNTS, PRISON GUARD, ROSP [PAST WRSP PRISON GUARD SERGEANT],
JAMES BENTLEY, PRISON GUARD, ROSP,
J. ELY, PRISON GUARD, ROSP,
SHANNON LONG, PRISON GUARD, ROSP,
FRANKLIN, PRISON GUARD, ROSP,
ROCKY WOOD, PRISON GUARD, ROSP,
D. MOONEY, PRISON GUARD, ROSP [PAST],
J. STANLEY, PRISON GUARD, ROSP,
PHILLIPS, PRISON GUARD, ROSP,
S. BOYD, PRISON GUARD, ROSP,
JOE FANNIN, PRISON GUARD SERGEANT, ROSP,
1

J. Smith, prison guard, ROSP,
T. Austin, prison guard, ROSP,
Randy Phipps, prison guard, ROSP,
McCowan, prison guard, ROSP,
Randy Boyd, prison guard, ROSP
 Serve at: P.O. Box 1900
 Pound, VA. 24279
Stanley Young, Warden, Wallens Ridge State Prison (WRSP),
Adam Harvey, Assistant Warden, WRSP [PAST],
T. Yates, Security Chief, WRSP [PAST],
C. Janeway, prison guard Captain, WRSP,
David Taylor, prison guard Captain, WRSP,
Michael Hutchinson, Investigator, WRSP [PAST],
James Wiandt, Investigator, WRSP [PAST],
Joe Bentley, prison guard Sergeant, WRSP,
Jeffery Head, prison guard Sergeant, WRSP,
A. Gallihar, prison guard Lieutenant, WRSP,
Meyer, prison guard Lieutenant, WRSP,
Matthew Hamilton, prison guard Sergeant, WRSP,
Jeffrey Compton, prison guard Lieutenant, WRSP,
Collins, prison guard Sergeant, WRSP,
Ewing, prison guard Sergeant, WRSP,
Sword, prison guard Sergeant, WRSP,
G. Sexton, prison guard, WRSP,
Kevin Young, prison guard, WRSP,
Gilley, prison guard, WRSP,
Vopp, prison guard, WRSP,
J. Hurley, prison guard, WRSP [PAST],
B. Sturgill, prison guard, WRSP,
Rusty Goins, prison guard, WRSP,
Hughes, prison guard, WRSP,
G. Bailey, prison guard, WRSP,
I. Hamilton, prison guard, WRSP,            defendants.
 Serve at: P.O. Box 759
 Big Stone Gap, VA. 24219

## CIVIL RIGHTS ACTION

### PARTIES

1. Plaintiff Kevin Johnson, no. 185492 is a state prisoner presently confined within the Virginia Department of Corrections (VDOC) at Red Onion State Prison (ROSP), P.O. Box 1900, Pound, Va. 24279.

2. All defendant herein are or were, at the time of their involvement in the claims raised herein, employed by and within the state of Virginia, and each officials' functions and duties are characterized by their official titles as set out in the caption of this document following their names.

3. Each defendant was at all times relevant hereto acting under color of state law; and each is being sued in their official capacities for injunctive and declaratory relief, and in their personal capacities for monetary damages.

### JURISDICTION

4. This federal court has jurisdiction over this action under 28 U.S.C. §1343 and supplemental jurisdiction under 28 U.S.C. §1367.

### VENUE

5. Venue lies under 28 U.S.C. §1391.

## GRIEVANCE EXHAUSTION

6. Plaintiff is presently barred by defendant Tracy Ray from filing grievances and complaints within the VDOC prisoner grievance procedure in revenge for his efforts to seek and obtain redress of abusive conditions within ROSP. This matter to be litigated in other proceedings. Thus plaintiff has no option for seeking redress of his claims herein via the VDOC or ROSP prisoner grievance procedure. Also that procedure bars his grieving the claims raised herein, except those that have been exhausted.

## INTRODUCTION

7. This is a civil action brought by plaintiff against defendants under 28 U.S.C. §2201, and 42 U.S.C. §§ 1981, 1983, 1985(2) and 1986 for their violations of the provisions of these statutes and plaintiff's rights under the U.S. Constitution's Cruel and Unusual Punishment, Due Process, Equal Protection and enforcement of International treaties clauses set out under U.S. Constitution Article VI cl. 2, and Amendments 8 and 14, by their acts of racial discrimination; denying plaintiff because of his race equal privileges and immunities as enjoyed by whites in Virginia; conspiracies and failure to abate known conspiracies of abuse; supervisory indifference; abuse of government power; excessive uses of force; deliberate indifference to known medical and safety needs; intentionally creating and failing to prevent known risks of serious harm to plaintiffs' health and safety; retaliation for his exercise of fundamental rights or in manners which deny such rights. Plaintiffs' claims as to U.S. Constitution Art. VI cl. 2 relate to defendants' violating international treaty law to which the U.S. is a signatory state, viz, The Convention on the Elimination of All Forms of Racial Discrimination (CERD).

8. Plaintiff also charges defendants' acts/omissions to violate similar provisions of the Virginia Constitution, and he also proceeds under Va Code § 8.01-42.1 for being subjected to racially motivated abuse, and § 53.1-39 for corporal punishments.

9. Plaintiff bases his federal constitutional and statutory claims on principles set out in Farmer v. Brennan, 114 S.Ct. 1970 (1994); Landman v. Royster, 333 F. Supp. 621, 648 (E.D. Va. 1971)(corporal punishment violates contemporary standards of decency); Hudson v. McMillian, 503 U.S. 1 (1992); Norman v. Taylor, 25 F.3d 1254 (4th Cir. 1994); Williams v. Benjamin, 77 F.3d 756 (4th Cir. 1996); Miller v. Leathers, 913 F.2d 1085 (4th Cir. 1990)(prison officials may not create situations to provoke specious uses of force against prisoners); Helling v. McKinney, 113 S.Ct. 2475 (1993); Estelle v. Gamble, 429 U.S. 97 (1976); Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984); etc.

10. Any delay in bringing of claims herein has been the result of obstructive acts/omissions of defendants; moreover, the conditions raised in the claims herein are ongoing.

## STATEMENT OF FACTS

11. Plaintiff is Black. All defendants herein are white except defendants Daniel Braxton and D. Mooney. On account of racial harassment by other guards at ROSP, Mooney no longer works at ROSP or for the VDOC, but resigned and sought new employment. After Daniel Braxton's appointment as ROSP warden was exposed to be a token assignment and his complete refusal to address racist abuses occurring at ROSP, he was replaced as ROSP warden by defendant Tracy Ray.

## CLAIM I

12. ROSP and WRSP, both VDOC prisons, were constructed and began operations in 1998 and 1999 as Virginia's two and only supermaximum security prisons (supermaxes). These prisons were constructed and began operations under authority of defendants ~~~~~~~~ Ronald Angelone, the Virginia governor, and Gene Johnson, and were not then or now ~~~~ legitimately needed or justifiable, but were constructed and used solely with motives of race (i.e. to economically benefit a community of self-segregated whites in Virginia's southwest, to economically benefit Virginia's ~~~~~~~~ white-monopolized corporate and political powers, and to create an environment calculated to brutally repress and isolate nonwhite ~~~~~~ prisoners).

13. These defendants devised jointly to locate these prisons in Wise county, Virginia to stimulate the white-monopolized state economy by creating jobs which would

3

generate corporate investments in the poor, rural, white communities in the far southwestern corner of the state. These defendants recognized this area of the state to be populated by communities of whites who voluntarily segregate themselves from other ethnic and racial groups, maintain - on account of and as a contributing factor to this isolation - antiquated derogatory stereotypes of other races (particularly Blacks), and maintain hostile racist views toward such races as a traditional attitude and part of their local culture.

14. These prisons were further tactically located in this region so to place an overwhelmingly disproportionate number of poor nonwhite prisoners into an area where they'd be received hostilely by both prison staff and - in cases of litigation and outside support - the surrounding communities, and so to isolate them from their own families, cultures and community support (viz, to inflict cultural shock on them). Race and retaliation have been determinative factors for prisoners assigned to these prisons, which is why most of the prisoners assigned to them have never met the security criteria for these prisons.

15. Plaintiff has been assigned to the VDOC since 1991, but since September 1998 he has been assigned to and rotated between these two supermaxes, which are located but a few miles apart and employ many of the same staff, their relatives, friends and community members. The staff at these prisons have always remained near exclusively white, whereas the prisoner populations remain disproportionately and predominantly nonwhite.

16. Prior to his supermax assignment beginning in 1998, plaintiff distinguished himself as a person inclined to resist abuse and to litigate violations of his legal rights and interests. It was solely on account of these tendencies that he was and remains assigned to these prisons.

17. Immediately prior to and upon his September 1998 assignment to said prisons plaintiff was directed threats by defendants Angelone and Gene Johnson, and repeatedly reminded of such threats by various of the defendants, that he would be either broken, maimed or killed by staff at these prisons should he persist in litigation or defending himself from physical abuses, and that these staff were given authorization to create the necessary situations to justify such acts against him. That VDOC administrators will not tolerate Black prisoners who are not passive in the face of abuse. Consequently, plaintiff has been the repeated victim of just such manufactured situations and brutalities, many of which are set out below in CLAIM II, as an ongoing effort to stop his complaints and resisting abuse, and to repeatedly maim and/or attempt to kill him. These acts and attempts have intensified of late in retaliation for a report he circulated during October 2004 and has twice supplemented outlining systematic racial abuses at ROSP. A copy of which report has been widely published and circulated by and amongst government, human rights and activist organizations. See Exhibit A.

18. The patterns of frequent attacks on plaintiff far exceed those described below in CLAIM II, however they have not been raised herein because they have not all resulted in more than de minimis injury to plaintiff although in most cases the motive has been to seriously injure plaintiff.

19. Racism and brutality are the norm at these supermaxes by their staff against their prisoners. Beatings, torture and even the murder of nonwhite prisoners by white staff at these prisons is routine and they have maintained, since shortly after their opening, national reputations for such conditions. Such abuses are so commonplace that other state's prison systems whom compacted to house their own prisoners at these supermaxes have ended in terminating their compacts and removing their own prisoners from these prisons.

20. Defendant Daniel Braxton, the only administrative level Black official at ROSP, was given his position in 2001 in the wake of these supermaxes coming under intense public pressure and independent investigations which exposed their racist and brutal conditions. Braxton's position had been solely to serve as window-dressing by his superiors Angelone, Johnson and others, to create a tokenist appearance of having acted to correct and address the conditions at these supermaxes. As intended, Braxton did nothing during his tenure as ROSP warden to change such conditions, and in

4

fact went out of his way to avoid being confronted with prisoners' complaints of abuse, overseeing staff conduct, involving himself in any way in supervising the day to day operations of ROSP, and he avoided contacts with prisoners in his charge. Defendant Ray has done much the same as Braxton.

21. Plaintiff repeatedly complained to defendants Angelone, Johnson, T. Brown, Inspector General and Mark Warner and his predecessors in office about the conditions and abuses set out in CLAIM II below which they all refused to correct.

CLAIM II

22. In pursuit of carrying out the threats against him as described in ¶ 17 above, defendants have subjected plaintiff to repeated violent attacks and corporal abuses, most times under circumstances which they fabricated and created, and while he was totally defenseless. Some of those series of situations are described below.

23. On June 1, 1999 defendants Hillyer, James Bentley, Daniel McCowan and M. Fleming brought plaintiff out of his assigned cell in handcuffs and shackles and had him held to the cell door by a nylon strap connected to the cuffs. At that point Hillyer attempted to provoke a violent reaction from plaintiff by repeatedly calling him racist names. When plaintiff did not react Hillyer punched him in the back of his head and McCowan repeatedly electrocuted plaintiff with a hand-held 50,000 volt electric weapon (Ultron II) in his kidney area until he nearly passed out, leaving him hanging painfully from the cell door by the said nylon strap and inflicting burns to his back.

24. On June 18, 1999 defendants Randall Cantrell, Larry Collins, Dewayne Turner, G. Mullins and Mullins pulled plaintiffs right arm out of a cell door's food access hatch using a nylon strap which was attached to a handcuff that was locked on his right wrist. These guards proceeded to attempt to break plaintiffs' arm at the elbow joint and repeatedly electrocuted him burning multiple holes in his arm with two Ultron II's. While attacking plaintiff defendants repeatedly voiced intentions to break his arm. Plaintiff never did anything to provoke or resist those defendants.

25. On December 3, 1999 defendants Ronald Fowler and Danny Damron refused plaintiffs' pleas for medical aid due to passing blood in his urine stemming from a potentially fatal and painful kidney disorder. Plaintiff in severe distress banged on the cell door and in response these defendants had him strapped down to a bed in 5-point restraints for two days, where they left him with no food, water, restroom breaks, etc. forcing him to urinate on himself and lie in it the entire time. Plaintiff suffered severe thirst, hunger and prolonged torturous pain. They also had plaintiffs physician prescribed medications denied him.

26. On December 6, 1999 defendants Richard Rowlette, Scotty Deel, Smiddy Harrison, Gregory Childress, D. Tiller, G. Mullins, S. White, W. Sykes, E. Fleming and J. Rasnick sprayed plaintiff for over an half hour with far in excess of lethal quantities of tear gas while he remained inside a small closed-in cell (some 46 ounces of gas) simply because he would not verbally communicate with Rowlette. After gassing him and attacking him as a riot team attired in body armor and repeatedly electrocuting him after he was restrained with two 50,000 volt electric shields, they refused to decontaminate him or the cell of tear gas and replaced him in the cell in 5-point restraints for two days. Plaintiff suffered lacerations, burns, severe pain, hyperventilation resulting in repeated instances of unconsciousness, severe burning of his flesh and mucous membranes, inability to open his eyes due to increased burning, mucous discharge from his eyes, etc.

27. On December 21, 1999 defendant Ronald Fowler - in revenge for plaintiffs' speaking up on behalf of another prisoner who he witnessed being abused - had a guard fabricate a report that plaintiff bent a pair of leg shackles which were hanging on his cell door so to falsely justify placing him in 5-point restraints (restrained to a bunk by his extremities with a strap across his chest). While

5

plaintiff was restrained in this fashion he was repeatedly punched, kicked, kneed and beaten by defendants S. White, Travis McCoy, Kevin McCoy and while defendant Larry Cox watched without intervening. Plaintiff suffered severe pain - internal and external - to his abdominal and groin where he was repeatedly struck. He also suffered internal ruptures causing him to vomit blood.

28. On May 8, 2000 defendant Armentrout had plaintiff placed in 5-point restraints for two days because plaintiff brought to his attention that he'd filed a lawsuit against him while speaking to him at plaintiff's assigned cell door. While in 5-points Armentrout had plaintiff denied meals, water, prescribed medications and restroom breaks, causing him severe thirst, hunger, to urinate on himself and to lie in it and prolonged torturous pain. Subsequently, Armentrout had guards search his cell twice to three times daily searching for the lawsuit, stealing legal documents and damaging his property.

29. On November 27, 2000 defendants Jeffery Head and G. Sexton refused plaintiff his lunch meal. Plaintiff attempted to bring attention to the situation by making noise, viz, banging on the cell door with a cloth deck shoe. In response defendants Head, Sexton, A. Gallihar, Stan Young, Adam Harvey, T. Yates, Meyer, Vorp, J. Hurley, B. Sturgill and Rusty Goins had plaintiff sprayed with lethal quantities of tear gas (two 96 ounce canisters were emptied into his cell) for nearly an hour. After gassing him and attacking him as a riot team attired in body armor, he was repeatedly electrocuted with 50,000 volt electric weapons and kneed in the face, after he was already restrained. Plaintiff was then put into 5 point restraints for two days inside the same cell which these defendants refused to decontaminate of gas. Plaintiff suffered severe burning to his skin and mucous membranes, hyperventilation, unconsciousness, vertigo, a sprained jaw, mucous discharge from his eyes, prolonged torture of gas contamination for two days, and severe pain.

30. On April 3, 2001 defendant Sexton invited plaintiff to an altercation with him (Sexton is some 6'5" tall and about 360 lbs, plaintiff is 5'9" and about 175 lbs), during which altercation Sexton was knocked to the floor and plaintiff went back into his cell. Sexton had had booth guards open plaintiffs' cell door while he was unrestrained in segregation which is a violation of prison procedure. Plaintiff was promptly restrained by other guards whom Sexton yelled to come to his aid. At no time before being restrained had plaintiff suffered any blows or injuries to his face or head, however, while held restrained and unresisting on the floor, Sexton and a mob of guards did repeatedly kick plaintiff in the face, rip out almost all of his then 2 feet long dreadlocks by the handsfull, stab him in the face with keys, repeatedly electrocute him in the head, back and arms with numerous Ultron II's, choke him and otherwise beat him about the face and head for some 2 to 3 minutes. They also maced him. Primary participants in the attack on plaintiff were Sexton, Matthew Hamilton, Jeffrey Compton, Joe Bentley, Hughes, C. Janeway, etc., while many guards stood about watching and using their bodies to try and shield other prisoners from seeing the attack. The attack occurred in an open pod area in full view of numerous prisoners, and only stopped because guards thought from the vast amount of blood and plaintiffs' not moving that he was dead.

31. Defendants Ewing, T. Yates, David Taylor, Adam Harvey, and others stood by watching the attack and not intervening. Defendants Michael Hutchinson and James Wiandt both conducted a cover-up investigation of the incident coaching corroborated false statements from guards, refusing to question of the witnesses witnessing prisoners, and having all such prisoners who proved vocal about the witnessed assault on plaintiff moved from the unit or transferred from WRSP. They also destroyed a pod surveillance camera tape that recorded the April 3rd attack on plaintiff. Plaintiff suffered as a result of the attack multiple facial lacerations requiring sutures to close, multiple hemorrhages across his eyeballs, punctured nasal cavity, two loosened teeth, multiple burns, skin torn from his scalp, burning face and mucous membranes, multiple internal lacerations, extreme pain, swelling and persistent soreness, etc.

32. In response to multiple public inquiries and lobbying of state legislators about the incident and following cover-up, and to divert such attention, defendant Inspector General's office had a separate incident involving the beating of another restrained Black prisoner by some of the same guard who beat plaintiff criminally prosecuted. Those guards were ultimately acquitted due to a staff-wide scheme at WRSP involving officials from Stanley Young down to guards and counselors. These officials had a group of hand-picked prisoners who were coached to act disruptive (kick doors, threaten, yell, be verbally abusive, and otherwise be as belligerent as possible), moved into a unit which was selected to be toured by the jury that was trying the criminal charges. The said prisoners were told that the jurors were from a 'scared straight' program, and the prisoners were bribed with extra meal trays and phone calls, favored job assignments, etc., to do their best to frighten the jurors, this all obviously to create a prejudiced and negative image of prisoners at WRSP in the jurors' minds in general and specifically toward the Black prisoner who was beaten in the case they were trying. The guards were presenting a false based defense that the prison environment was extraordinarily dangerous and hostile and any force they used was of the sort necessary to deal with that sort of environment. This is but an example of the lengths these supermax officials will go to to cover up and protect each other from accountability for racist brutality and abuses, and the license they are given to attack plaintiff. After the jury tour most of these hand-picked prisoners were returned to their previous cell assignments.

33. On June 19, 2001 defendant Gilley took a religious prayerbook from plaintiff. Plaintiff using a cloth deck shoe banged on the cell door to gain some attention to the matter. In response defendant Gallihar had him sprayed with with a lethal quantity of tear gas and attacked and beaten by a riot squad which included Gilley, defendants Sword, G. Bailey, I. Hamilton, Keith Counts, and Sergeant Collins. During this attack plaintiff was repeatedly choked, had his hair ripped out (portions of what remained or had regrown since April 3, 2001), finger dug into his eyes, was kicked, punched, elbowed, kneed, etc., causing lacerations to his legs, mouth and back, swellings, dislocated thumb, bleeding scalp were skin was pulled out, etc. severe pain, etc. The beating occurred after plaintiff had been restrained. Plaintiff was then bodily dumped into the cell, which was not decontaminated of gas, in ambulatory restraints (chains, handcuffs and shackles) for some eight hours, causing him continued hyperventilation, burnings of skin and mucous membranes and severe pain and discomfort.

34. After the April 3, 2001 attack on plaintiff G. Sexton was tactically assigned on a permanent basis to work plaintiffs' assigned housing unit with Joe Bentley as unit supervisor. These defendants repeatedly served plaintiff tainted meals with spit, and gravel in his foods, finger impressions in his baked foods, etc. Plaintiff finally filed written complaint about this on June 21, 2001 despite threats that he'd best not complain or he'd be attacked again. Immediately following having the complaint processed, he was confronted by defendants Joe Bentley, G. Sexton and Kevin Young for a pretend cell search. Plaintiff was handcuffed from behind, leg shackled and made to remain kneeling, whereupon Sexton and Bentley without warning or provocation bodily slammed plaintiff face foreward to the floor lacerating his chin. This done while a video camera was present and taping the incident.

35. On October 5, 2003 defendants J. Kiser, Dewayne Turner, and Delmer Tate set plaintiff up to be attacked by two teams of guards in riot armor because he filed a complaint about witnessing defendants James Bentley, J. Ely and Shannon Long attack a managed Black prisoner in the cell next to him. Turner, Kiser and Tate had plaintiff sprayed with lethal quantities of tear gas and attacked by defendants Franklin, Daniel McCowan, Rocky Wood, J. Ely, Shannon Long, D. Mooney, J. Stanley, Phillips, James Bentley and/or S. Boyd who were attired in riot armor and armed with two 50,000 volt electric shields. Upon plaintiffs' being restrained these guards beat him about the head and upper spine, and choked him and/or beat him into unconsciousness. Plaintiff awoke with a severe concussion (unable to see, hear or speak), spinal pain and patches of hair ripped out, also

with lengthy lacerations to his arm, legs and face which were made with a sharp bladed object. His wrist was believably fractured and his right forefinger dislocated. He also suffered damage to his throat's hyoid bone. Defendant Stiltner refused to render any aid to plaintiff while witnessing him both unconscious and evidencing symptoms of concussion. Defendants Kiser, Turner, and Tate had plaintiff replaced in the same cell which was not decontaminated of gas into ambulatory restraints til the next day, causing him to suffer hyperventilation, vertigo, continued burning of his skin and mucous membranes, etc. Defendants P. Harless and V. Phipps repeatedly refused to process plaintiffs' repeated complaints/requests to be seen on sick call about his wrist and throat.

36. Later on the evening of October 5, 2003 defendants Fowler, Joe Fannin, G. Kendrick entered plaintiffs' cell while he was still in ambulatory restraints under the guise of returning him a mattress. At which time Fowler forcefully pushed him onto the bed, stomped on his foot and proceeded to systematically rip out his hair by handsfull which was then about seven inches long. Kendrick then fabricated a claim to cover for Fowler that he observed plaintiff ripping his own hair out while in ambulatory restraints.

37. On February 2, 2005 in response to plaintiffs' having sent out the letter, report and addendum attached hereto as Exhibit A, and his complaints of abuse defendant Harrison had plaintiff set up for attack by defendant R. Phipps. Phipps with defendants Boyd and McCowan came to move plaintiff to their assigned unit, taking him outside the housing building and view of surveillance cameras. Upon being taken outside Phipps grabbed plaintiff from behind while he was handcuffed and shackled by his hair and throat and drove him face forward into a wall breaking his front tooth, ripping out a 3" x 3" patch of hair and causing him a whiplash injury, and a deep laceration to his inner lower lip. Plaintiff was refused medical assistance, referral and sick call by defendant Terie Phipps (Randy Phipps' wife) who was tactically assigned to work the unit on the day of this attack on plaintiff, and V. Phipps.

38. The foregoing are but a few of a routine, common, unbroken policy and practice of targeting plaintiff with continued, unprovoked, unjustified and excessive violence and abuse at these supermaxes calculated to stop his complaints and litigations exposing and challenging abuses and his own refusal to physically relent to official terrorism.

39. In addition to the injuries otherwise described throughout this complaint, plaintiff has and is suffering as a proximate cause of defendants' acts/omissions stated above, permanent scars, impaired vision, permanent damage to various body areas and functions, severe pain and suffering, humiliation, anger, duress, fear of being killed or further maimed, anxiety and extreme physical and emotional distress.

Plaintiff swears to the truth of all the foregoing facts under penalty of perjury.

Plaintiff demands jury trial on all issues so triable.

THEREFORE, plaintiff seeks the following relief:

A. Compensatory, punitive, and nominal damages against each defendant jointly and severally in such specific sum in excess of $20 as a jury finds appropriate.

B. Judgment declaring plaintiffs' rights and relations with defendants and their violations thereof.

C. Injunctive relief (preliminary and permanent injunction) as found appropriate including removal from housing in ROSP and WRSP — plaintiff will formally move for preliminary injunction upon the filing and service of this action.

D. Pre and post-judgment interest.
E. Any further and additional relief deemed fair and just.
F. That any jury trial be held and jury pool be selected outside of southwest Virginia.

Submitted by,

Kevin Johnson, no. 185492
Red Onion State Prison
P.O. Box 1900
Pound, Va. 24279

Date 3-22-05
Notary Richard Austin
My Commission Expires April 30, 2008

9

Kevin Johnson, No. 185492
Red Onion State Prison
P.O. Box 1900
Pound, VA. 24279

March 22, 2005

Clerks Office
U.S. Dist. Ct. W. Dist. VA.
P.O. Box 1234
Roanoke, VA. 24011

RE: Civil Action to be filed.

Dear Clerk:

   Enclosed for filing with this court as an original action please find my civil rights complaint with motion to proceed in forma pauperis. Please have those papers filed and processed.

   Thank you for your assistance.

Kevin Johnson

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
MAR 25 2005
JOHN F. CORCORAN, CLERK
BY: _____
       DEPUTY CLERK

Kevin Johnson, No. 185442
Red Onion State Prison
P.O. Box 1900
Pound, VA. 24279

Legal Mail

VIRGINIA DEPARTMENT OF CORRECTIONS HAS NEITHER CENSORED OR INSPECTED ITEM. THEREFORE, THE DEPARTMENT DOES NOT ASSUME ANY RESPONSIBILITY FOR ITS CONTENTS

Clerk's Office
U.S. District Court for District of VA.
P.O. Box 1234
Roanoke, VA. 24011

