# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| **KEVIN JOHNSON**, | ) | |
| Plaintiff, | ) | Case No. 7:05cv00219 |
| | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| | ) | |
| **MARK WARNER, et al.**, | ) | BY: PAMELA MEADE SARGENT |
| Defendants. | ) | UNITED STATES MAGISTRATE JUDGE |

*I. Procedural History*

On April 15, 2005, the plaintiff Kevin Johnson, an inmate of the State of Virginia, proceeding pro se, filed a complaint,[1] ("Complaint"), pursuant to 43 U.S.C. § 1983. (Docket Item No. 1.) In the Complaint, which was sworn to under penalty of perjury,[2] Johnson alleged that he had been subject to supervisory indifference, conspiracy, abuse of governmental power, excessive use of force, deliberate indifference to a serious medical need and

---

[1] A document filed pro se is "to be liberally construed," and "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal citations and quotations omitted); *see also Noble v. Barnett*, 24 F.3d 582, 587 n.6 (4th Cir. 1994) (citing *Haines v. Kerner*, 404 U.S. 519 (1972)) (stating that pro se filings "however unskillfully pleaded, must be liberally construed"); *cf.* Fed. R. Civ. P. 8(e) (stating that "[p]leadings must be construed so as to do justice.")

[2] Because this filing was sworn to under penalty of perjury, the filing qualifies as an affidavit under Federal Rule of Civil Procedure 56(e) and 28 U.S.C. § 1746. *See Williams v. Sielaff*, No. 89-7750, 1990 WL 135721, at *1 (4th Cir. Sept. 20, 1990).

-1-

cruel and unusual punishment. On the same date Johnson filed his Complaint, Senior United States District Court Judge Jackson L. Kiser dismissed Johnson's Complaint pursuant to the three strike rule of the Prison Litigation Reform Act of 1996. *See* 28 U.S.C. 1915(g) (2006). (Docket Item Nos. 2 and 3.) Thereafter, Johnson moved for reconsideration, which was denied, and subsequently appealed his dismissal to the United States Court of Appeals for the Fourth Circuit. (Docket Item Nos. 4, 6 and 7.) Because Johnson alleged sufficient facts to establish the presence of imminent danger, Judge Kiser's dismissal Order was vacated, and the case was remanded to this court for further proceedings. (Docket Item No. 14.) In a memorandum opinion dated March 8, 2007, Judge Kiser dismissed all of Johnson's claims that arose outside of the statute of limitations period, as failing to state a claim upon which relief may be granted. (Docket Item No. 28.) Because Johnson signed and dated his Complaint on March 22, 2005, Judge Kiser dismissed all of Johnson's claims that occurred before March 22, 2003, and allowed claims regarding the alleged incidents on October 5, 2003, and February 2, 2005, to go forward. (Docket Item No. 28.)

On October 4, 2007, Johnson filed a Motion to Join and Drop Defendants, (Docket Item No. 129), and a Motion to Amend, (Docket Item No. 130), which included an "Amended Civil Rights Action." On October 16, 2007, this court granted both motions, (Docket Item No. 135), and noted that the allegations sought to be added by Johnson's Motion to Amend, which were sworn to under penalty of perjury, only added facts to the matters already contained in the Complaint or merely added specificity to those matters. Thus, for purposes of this Memorandum

Opinion, the court will consider the facts alleged in Johnson's Motion to Amend, in addition to the facts alleged in Johnson's Complaint. Accordingly, the remaining claims against the remaining defendants are:

1. Johnson's claim that, on October 5, 2003, defendants J. Kiser, DeWayne Turner, Delmer Tate, Daniel McGowan, J. Ely, Shannon Long, D. Mooney, J. Stanley, Phillips and James Bentley subjected him to excessive force.[3] (Complaint at ¶ 35; Plaintiff's Motion to Join and Drop Defendants at 1.)

2. Johnson's claim that, on October 5, 2003, defendants Kiser, Turner and Tate were deliberately indifferent to the conditions of the cell to which Johnson was returned; inasmuch as Johnson alleges that the cell was contaminated with tear gas and was not decontaminated until the next day. (Complaint at ¶ 35.)

3. Johnson's claim that, on October 5, 2003, defendant Stiltner[4] "refused to render any aid to plaintiff," and defendants P. Harless and V. Phipps "repeatedly refused to process . . . requests to be seen on sick call . . . ." (Complaint at ¶ 35.)

---

[3] Throughout this Memorandum Opinion, defendants' names are often provided as plaintiff stated them in his pleadings. At other times, these names are provided in the form used by defendants in the motions filed. Where a defendant's first name is not provided, when referencing plaintiff's pleadings, plaintiff did not supply any further identification.

[4] Defendant L. Stiltner has been dismissed from the complaint and defendant A. Stiltner was added as a party. (Docket Item No. 129.)

-3-

4.    Johnson's claim that, on October 5, 2003, defendants Fowler, Joe Fannin and G. Kendrick all subjected Johnson to excessive force. (Complaint at ¶ 36.)

5.    Johnson's claim that, on February 2, 2005, defendants Harrison, R. Phipps and McCowan retaliated against him for exercising his constitutional rights and subjected him to excessive force. (Complaint at ¶ 37; Plaintiff's Motion to Join and Drop Defendants at 1.)

6.    Johnson's claim that, on February 2, 2005, defendants Terie Phipps and V. Phipps refused to give him medical assistance or a referral for medical assistance or a referral to sick call. (Complaint at ¶ 37.)

Currently, this matter is before the undersigned on the defendants' Motion For Summary Judgment, (Docket Item No. 58), ("First Motion"), the defendants' Motion For Summary Judgment, (Docket Item No. 61), ("Second Motion"),[5] the defendant's Supplemental Motion For Summary Judgment, (Docket Item No. 87), the defendants' Supplemental Motion For Summary Judgment, (Docket Item No. 122), and the defendants' Motion For Summary Judgment, (Docket Item No. 165), (collectively referred to as "Supplemental Motions").[6] Jurisdiction is conferred upon this court pursuant to 28 U.S.C. § 1343. This case is before the

---

[5]Docket Item No. 61 is before the court insofar as it pertains to defendants Vicki Phipps and Terie Phipps. Defendant Lisa Stiltner has been dismissed from this action.

[6]Docket Item No. 122 is before the court insofar as it pertains to defendant John Phillips. Defendant Sam Boyd has been dismissed from this action. Further, Docket Item No. 117, a motion for summary judgment filed by Rocky Wood, will not be discussed in this Memorandum Opinion because that defendant has been dismissed from the case.

-4-

undersigned magistrate judge upon transfer pursuant to the consent of the parties under 28 U.S.C. § 636(c)(1).

## II. Facts

Johnson is a state prisoner who was confined at Red Onion State Prison, ("ROSP"), in Pound, Virginia, at the time of his Complaint. (Complaint at ¶ 1.) In the Complaint, Johnson states that the conditions he was being subject to were ongoing at the time of the filing of the Complaint. (Complaint at ¶ 10.)

### A.    The October 5, 2003, Incident

The facts presented in the record of this case will be viewed in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Johnson alleges that on October 5, 2003, defendants J. Kiser, Dewayne Turner and Delmer Tate set up Johnson to be attacked by two teams of guards in riot armour because he filed a complaint about witnessing defendants James Bentley, J. Ely and Shannon Long attack a black prisoner in the cell next to him. (Complaint at ¶ 35.) According to Johnson, defendants Turner, Kiser and Tate had Johnson sprayed with lethal quantities of tear gas and also had him attacked by defendants Franklin, Daniel McCowan, Rocky Wood, J. Ely, Shannon Long, D. Mooney, J. Stanley, Phillips, James Bentley and/or S. Boyd, while they were armed with two 50,000-volt electric shields and dressed in riot armour.[7]

---

[7]In Johnson's Amended Complaint, which this court allowed insofar as it elaborates on the incidents before the court, Johnson alleges that Turner, Kiser, Long, W. Gibson, J. Ely, D. Mooney, J. Stanley, J. Boyd, J. Lambert, C. Boyd, E. Williams and J. Mullins were involved in the October 5, 2003, original assault, which took place before he was taken to the shower in an unconscious state. (Amended Civil Rights Action, ("Amendments to Complaint"), Docket Item

-5-

(Complaint at ¶ 35.) Johnson further alleges that he was then restrained, beaten in the head and upper spine and choked until he was unconscious. (Complaint at ¶ 35.) After the attack, Johnson alleges that he was dragged to the shower floor and then dragged back to his cell, all while unconscious. (Amendments to Complaint at ¶ 7.)

Thereafter, defendants Kiser, Turner and Tate placed Johnson back in his cell and left him in his ambulatory restraints until the next day, causing him to suffer hyperventilation, vertigo and burning of his skin and mucous membranes. (Complaint at ¶ 35.) In addition, Johnson alleges that, after being taken back to his cell, defendants C. Boyd, Narramore and others assaulted him by slicing his face, arm and leg with a small knife, bending his right index finger completely back and out of the knuckle socket, striking him in the testicles and bending his wrist completely back in an attempt to break it. (Amendments to Complaint at ¶¶ 7-8.) Those who assaulted Johnson were directed to do so by Tate, Turner and G. Deel, while J. Lyall was purposely causing the camera to blur and pointing it at the guards' backs to prevent recording of the assault. (Amendments to Complaint at ¶ 8.) Johnson awoke with a severe concussion; was unable to see, hear or speak; had spinal pain; had patches of hair ripped out and had "lengthy" lacerations to his arm, legs and face, which were made with a sharp bladed object. (Complaint at ¶ 35.) In addition, Johnson believed that his wrist was fractured, his right forefinger was dislocated and he suffered damage to his throat's hyoid bone. (Complaint at ¶ 35.)

No. 130.) Thus, Johnson's amendments do not mention that Tate, Franklin, Daniel McCowan, Rocky Wood, Phillips, James Bentley and S. Boyd were involved in that particular incident, and add W. Gibson, J. Boyd, J. Lambert, C. Boyd, E. Williams and J. Mullins as alleged assailants.

-6-

According to Johnson, defendant Stiltner refused to render any aid to Johnson while he was unconscious and displayed symptoms of a concussion.[8] (Complaint at ¶ 35.) Additionally, Johnson alleges that defendants P. Harless and V. Phipps repeatedly refused to process Johnson's complaints and requests to be seen on sick call. (Complaint at ¶ 35.) Later that day, while Johnson was still in ambulatory restraints, defendants Fowler, Joe Fannin and G. Kendrick entered Johnson's cell, under the guise of returning a mattress to him. (Complaint at ¶ 36.) Fowler then forcefully pushed Johnson onto the bed, stomped on his feet and proceeded to rip out his hair by the handsful. (Complaint at ¶ 36.) Johnson further alleges that Kendrick later fabricated a story to cover for Fowler, claiming that he observed Johnson ripping out his own hair. (Complaint at ¶ 36.)

*B. The February 2, 2005, Incident*

In his Complaint and Amendments to his Complaint, Johnson alleges that on February 2, 2005, defendant Harrison set Johnson up for attack by defendant R. Phipps because he sent a letter and report to Governor Warner, in which he described the racist and abusive conditions of ROSP.[9] (Complaint at ¶ 37.) According to Johnson, defendant Phipps, along with defendants Boyd and McCowan, took Johnson outside of the view of the security cameras, grabbed him from behind by his hair and throat, while he was handcuffed and shackled, and

---

[8]In Johnson's Amendments to Complaint, he notes that nurses A. Stiltner and D. Lester entered his cell and observed him unconscious, suffering multiple symptoms of concussion, breathing heavily, unresponsive to verbal communication or physical stimuli and inaudibly howling continuously. (Amendments to Complaint at ¶ 9.) Nurses A. Stiltner and D. Lester, however, left Johnson without medical care and fabricated the story that he denied any distress. (Amendments to Complaint at ¶ 9.)

[9]Johnson attached the letter as an exhibit to his Complaint.

drove him face forward into a wall, breaking his front tooth, ripping out a three inch by three inch patch of hair and causing a whiplash injury and a deep laceration to his inner lower lip.[10]  (Complaint at ¶ 37.)  Johnson further alleges that he was denied medical treatment by defendant Terie Phipps, whom Johnson alleges was "tactically" assigned to work the unit on the day of his attack.  (Complaint at ¶ 37.)

### III. Standard of Review

The standard of review for a motion for summary judgment is well-settled. A moving party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c); *see also Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979).  A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.

The party seeking summary judgment has the initial burden to show absence of evidence to support the nonmoving party's case.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Moreover, the opposing party must demonstrate that a triable issue of fact exists; he may not rest upon mere allegations or denials and a

---

[10]In Johnson's Amendments to Complaint, he adds that R. Boyd was with R. Phipps during the assault on February 2, 2005.  (Amendments to Complaint at ¶ 11.)

-8-

mere scintilla of evidence supporting the case is insufficient.[11]  *See Anderson*, 477 U.S. at 248.

*IV. Analysis*

A.      *First Motion*

On May 7, 2007, defendants J. Kiser, P. Harless, G. Kendrick, D. Turner, R. Fowler, S. Harrison, D. Tate, D. McCowan, J. Bentley, J. Ely and J. Fannin filed a motion for summary judgment with this court.  All of the defendants in the First Motion denied Johnson's allegations.  (Memorandum In Support Of Motion For Summary Judgment, Docket Item No. 59, ("First Motion Brief"), at 5-23.)  Further, in the First Motion, defendants Kiser, Tate, Turner, McCowan, Ely and Bentley all argue that they did not use excessive force against Johnson.  (First Motion Brief at 5-14.)  The defendants paint a horrid picture of Johnson and provide the court with a discussion of all the efficient and safe security procedures that have been developed at ROSP.  (First Motion Brief at 5-13.)  Further, the defendants offer an explanation of why Johnson was restrained on October 5, 2003, and what procedures were followed when Johnson was removed from his cell, decontaminated in the shower and returned back to his cell.  (First Motion Brief at 9-13.)  The defendants also point out that Captain Turner did not observe any of his staff strike, choke, beat or otherwise attempt to harm Johnson.  (First Motion

---

[11]The Court is required to give latitude to a pro se plaintiff.  *See, e.g., Gordon v. Leeke*, 574 F.2d 1147, 1152 (4th Cir. 1978) ("What might be a meritorious claim on the part of a pro se litigant unversed in the law should not be defeated without affording the pleader a reasonable opportunity to articulate his cause of action."); *see also Waller v. Butkovich*, 605 F. Supp. 1137, 1140 (M.D.N.C. 1985) ("[T]he Court notes the especially lenient treatment with which it must consider pro se pleadings when faced with a motion to dismiss those pleadings.")

Brief at 12.) Additionally, medical records provided indicate that Johnson was seen several times by medical personnel, that he failed to voice any complaints and that there was no indication that Johnson had any bruises or open wounds consistent with his claims of alleged assault. (First Motion Brief at 12.)

As previously noted, in considering a motion for summary judgment, this court must view the facts, and the reasonable inferences to be drawn from those facts, in the light most favorable to Johnson. *See Anderson*, 477 U.S. at 255. Further, Johnson is entitled to have the credibility of all his evidence presumed. *See Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990). Based on the evidence before the court, therefore, regarding defendants J. Kiser, P. Harless, G. Kendrick, D. Turner, R. Fowler, S. Harrison, D. Tate, D. McCowan, J. Bentley, J. Ely and J. Fannin, and their part in the October 5, 2003, incident, the court is of the opinion that a reasonable jury could return a verdict for Johnson. *See Anderson*, 477 U.S. at 248. While the medical reports indicate that Johnson did not have any bruises or open wounds consistent with his claims, Johnson alleges that medical personnel falsely documented his injuries and his complaints. (Amendments to Complaint at ¶ 9.) Thus, the question of whether defendants J. Kiser, P. Harless, G. Kendrick, D. Turner, R. Fowler, S. Harrison, D. Tate, D. McCowan, J. Bentley, J. Ely and J. Fannin subjected Johnson to excessive force presents a sufficient disagreement to require submission to a jury. *See Anderson*, 477 U.S. at 251-52. Likewise, whether Johnson was subject to excessive force by defendants Fowler, Fannin and Kendrick when his mattress was returned on October 5, 2003, presents a triable issue of fact.

-10-

As to the use of excessive force, the Eighth Amendment prohibits the infliction of "cruel and unusual punishment." U.S. CONST. amend. VIII. This amendment not only prohibits excessive sentences, but it also protects inmates from inhumane treatment and conditions while imprisoned. *See Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). The unnecessary and wanton infliction of pain by a prison official using excessive force upon an inmate has been clearly established as a violation of the Eighth Amendment's prohibition on cruel and unusual punishment. *See Hudson v. McMillian*, 503 U.S. 1, 5 (1992); *Whitley v. Albers*, 475 U.S. 312, 319 (1986). The determination of whether the use of force by a prison official violates the Eighth Amendment includes both a subjective and objective component. *See Williams*, 77 F.3d at 761 (citing *Wilson v. Seiter*, 501 U.S. 294, 302 (1991)).

> Specifically, Eighth Amendment analysis necessitates inquiry as to whether the prison official acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component).

*Williams*, 77 F.3d at 761.

To meet the subjective component in an excessive force case, the inmate must show that the prison official applied force "maliciously and sadistically for the very purpose of causing harm." *Whitley,* 475 U.S. at 320-21. The inquiry under the subjective standard is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6. The Supreme Court in *Whitley* set out several factors

-11-

which should be considered in determining whether prison officials acted maliciously and sadistically.  In particular, the court should consider:

> 1) the need for application of force;
> 2) the relationship between that need and the amount of force used;
> 3) the threat "reasonably perceived by the responsible officials;" and
> 4) "any efforts made to temper the severity of a forceful response."

*Williams*, 77 F.3d at 762 (quoting *Whitley*, 475 U.S. at 321).

If Johnson's allegations are true, a reasonable jury could find that the defendants acted with a sufficiently culpable state of mind, and the subjective component would be met.

To meet the objective component in an excessive force case, an inmate must show that he suffered more than *de minimis* pain or injury.[12] *See Williams*, 77 F.3d at 761 (citing *Hudson*, 503 U.S. at 9-10).  While the defendants argue that because *de minimis* injury occurred, the court can conclude that only *de minimis* force was used, Johnson's allegations present anything but *de minimis* injuries.  If Johnson's injuries are as alleged in each incident, more than *de minimis* injury resulted and the objective component of Johnson's excessive force claim also would be met.

Additionally, because of Johnson's allegations that medical records were falsified, there is a triable issue of fact as to whether defendants P. Harless and V. Phipps repeatedly refused to process Johnson's requests to be seen on sick call. While the medical records indicate that Johnson was examined by medical personnel on October 5, 6, 8 and 9, 2003, Johnson has alleged that these medical

---

[12] Not every malevolent touch by a prison guard amounts to a deprivation of constitutional rights. *See Hudson*, 503 U.S. at 9 (citing *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir. 1973)).

records were falsely documented. (Complaint at ¶ 35; First Motion Brief, Exhibit Four, at 5-6; Amendments to Complaint at ¶ 9.) In *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976), the Supreme Court extended the reach of the Eighth Amendment to create a constitutional obligation on the part of the government to provide prisoners adequate medical care. In order for a prisoner to sustain an Eighth Amendment claim for deliberate indifference to serious medical needs, a prisoner must satisfy a two-prong test, including an objective component, as well as a subjective component. The objective component is met when the prisoner proves that his medical need is serious. *See Wilson*, 501 U.S. at 297. The subjective component is met when a prison official acts with deliberate indifference to a prisoner's serious medical need. *See Farmer v. Brennan*, 511 U.S. 825, 837-41 (1994). A prisoner must carry his burden of proof on both of these elements to establish a successful claim of deliberate indifference. *See Helling v. McKinney*, 509 U.S. 25, 30 (1993). A medical need is "serious" if it is one "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Cox v. District of Columbia*, 834 F. Supp. 439, 441 (D.D.C. 1992). Here, Johnson complained of various injuries that would be serious enough that even a lay person would easily recognize the need for medical attention. Further, if, as Johnson alleges, P. Harless and V. Phipps repeatedly refused to process Johnson's requests to be seen on sick call, this would constitute a deliberate indifference to Johnson's serious medical need.

The First Motion also argues that S. Harrison and McCowan did not subject the plaintiff to excessive force on February 2, 2005, in retaliation of Johnson's exercise of Constitutional rights. (First Motion Brief at 16-23.) Retaliation by a

-13-

government official for the exercise of a constitutional right is actionable under 42 U.S.C. § 1983. *See Am. Civil Liberties Union of Md., Inc. v. Wicomico County, Md.*, 999 F.2d 780, 785 (4th Cir. 1993) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977)). A plaintiff alleging that government officials retaliated against him in violation of his constitutional rights must demonstrate that he suffered some adversity in response to his exercise of protected rights. *See Wicomico County*, 999 F.2d at 785 (citing *Huang v. Bd. of Governors of Univ. of N.C.*, 902 F.2d 1134, 1140 (4th Cir. 1990)). Although Johnson has proffered nothing more than his own contentions that S. Harrison and McCowan acted in retaliation, the court cannot hold that a fact finder could not reasonably find a case of retaliation. *See Dillon v. Murray*, 853 F. Supp. 199, 204 (W.D. Va. 1994). Consequently, the court is of the opinion that summary judgment should not be granted as to the retaliation claim.

Additionally, the defendants' First Motion raises questions regarding sovereign immunity and qualified immunity. (First Motion Brief at 23-24.) With regard to the defendants' sovereign immunity argument, the court agrees that the plaintiff cannot sue the defendants in their official capacities for damages. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989). However, the plaintiff can sue the defendants in their official capacities for prospective relief, and the court will allow it. *See Mich. Dep't of State Police*, 491 U.S. at 71 n.10 (citing *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14 (1985)); *Ex parte Young*, 209 U.S. 123, 159-60 (1908) (internal quotations omitted) (stating that "[o]f course, a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State"); *but see Alabama v. Pugh*, 438 U.S. 781

-14-

(1978) (per curiam) (noting that a State cannot be sued directly in its own name regardless of the relief sought).

With regard to the defendants' qualified immunity argument, the threshold inquiry this court must decide is whether Johnson's allegations, if true, establish a constitutional violation.[13]  *See Hope v. Pelzer*, 536 U.S. 730, 736 (2002) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  The court is of the opinion that Johnson's allegations, viewed in the light most favorable to Johnson, do establish a constitutional violation.  A government official is entitled to qualified immunity from civil damages for performing discretionary functions when his "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Taylor v. Waters*, 81 F.3d 429, 433 (4th Cir. 1996) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  In this case, if the defendants did assault Johnson and deny him medical care in the manner in which he alleges, their conduct would clearly contravene, *inter alia*, the Eighth Amendment's prohibition of cruel and unusual punishment.  Moreover, a reasonable person would have known that such conduct would violate an individual's statutory and constitutional rights.  *See Taylor*, 81 F.3d at 433.

Lastly, the court would like to comment on the defendants' suggestion in the First Motion that "[a] copy of [a cell extraction] videotape can also be made available to the [c]ourt for review."  (First Motion Brief at 10 n.6.)  The court has no duty or obligation to request evidence not on file.  Rather, it is the parties' duty

---

[13]In addition, it should be noted that qualified immunity, even if applicable, would only protect employees of the state.  *See Richardson v. McKnight*, 521 U.S. 399, 401 (1997) (noting that qualified immunity is not available to employees of privately run security agencies). While it appears that the correctional officer defendants are employees of the state, the defendants have not submitted sufficient evidence by way of affidavit to the court to establish this fact on these motions.

-15-

to submit evidence, and not the court's duty to request it. This court will consider all evidence on file, but it will not undertake the task of seeking out evidence that is not distinctly put before it. If counsel wishes evidence to be considered, then counsel should submit that evidence for the court to consider.

*B. Second Motion*

On May 8, 2007, defendants Vicki Phipps and Terie Phipps[14] filed a motion for summary judgment with this court. Along with the Second Motion, defendants Vicki Phipps and Terie Phipps filed affidavits stating that neither was working at ROSP on October 5, 2003. Johnson, however, alleges that V. Phipps repeatedly refused to process his requests to be seen on sick call on that day, and the court will treat the argument for summary judgment in the same manner as the First Motion.[15] Accepting Johnson's allegations as true, there is a triable issue of fact as to whether, V. Phipps repeatedly refused to process sick call requests on October 5, 2003.

Regarding the allegations on February 2, 2005, the Second Motion asserts that there is no evidence that Johnson sought or needed any medical attention on that particular day.[16] (Defendants, Vicki Phipps, Terie Phipps and Lisa Stiltner's Memorandum Of Law In Support Of Motion For Summary Judgment, Docket Item No. 62, ("Second Motion Brief"), at 2.) However, Johnson alleges that defendants

---

[14] Lisa Stiltner also joined in this motion, but was later dismissed by this court and is no longer a party.

[15] Plaintiff did not allege that Terie Phipps repeatedly refused to process his requests on October 5, 2003.

[16] Rather, the next sentence in the Second Motion Brief discusses evidence suggesting that Johnson told prison officials about the incident five months later.

-16-

Terie Phipps and V. Phipps refused to give him medical assistance or a referral for medical assistance or sick call. (Complaint at ¶ 37.) Based on these contrary allegations, the court is of the opinion that, when looking at the evidence in the light most favorable to Johnson, a jury could reasonably conclude that defendants Terie Phipps and V. Phipps refused Johnson's requests for care on February 2, 2005.

Further, this refusal would establish the deliberate indifference to serious medical needs that "constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Estelle*, 429 U.S. at 105 (internal quotations and internal citations omitted). Viewing the facts in the light most favorable to Johnson, the defendants' acts were "sufficiently serious" and were performed with a "sufficiently culpable state of mind."[17] *Farmer*, 511 U.S. at 834. Thus, the court denies the Second Motion regarding Johnson's claims that on October 5, 2003, V. Phipps refused to process Johnson's requests to be seen on sick call, and that on February 2, 2005, defendants Terie Phipps and V. Phipps refused to give Johnson medical assistance or a referral for medical assistance or sick call.

*C. Defendants' Supplemental Motions*

On June 11, 2007, defendant David Mooney filed a supplemental motion for summary judgment; on September 6, 2007, defendant John Phillips[18] filed a

---

[17]The sufficiently culpable state of mind required, as noted before, is deliberate indifference. The prison official must know of and disregard an excessive risk to an inmate's health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Farmer*, 511 U.S. at 837.

[18]Defendant Sam Boyd also joined in this motion, but has since been dismissed from this case.

Case 7:05-cv-00219-JPJ-PMS   Document 180-1   Filed 03/05/08   Page 17 of 18   Pageid#: 1061

supplemental motion for summary judgment; and on December 12, 2007, defendants J. Lambert, J. Boyd, R. Boyd, L. Lyall and E. Williams filed a motion for summary judgment. These motions and the memoranda of law accompanying them raise the same arguments raised in the First Motion and Second Motion, which are discussed above and will not be revisited by this court.

In an Order entered on January 10, 2008, (Docket Item No. 169), this court gave Johnson an extension on his allotted time for reply and ordered Johnson to file any additional written argument or evidence he wished the court to consider on the defendants' pending motions for summary judgment, (Docket Item Nos. 58, 61, 87, 122 and 165), by no later than February 29, 2008. Johnson has failed to do so, and the court will no longer delay its ruling on these motions.

Based on the above stated reasons, the First Motion and the Second Motion will be denied. I also will deny the Supplemental Motions. The claims currently before the court, therefore, remain the same as noted above. However, insofar as the Complaint can be construed to sue any defendant in his or her official capacity for damages, that portion of the Complaint will be dismissed.

An appropriate order will be entered.

**DATED:**   This 5th day of March 2008.

/s/ *Pamela Meade Sargent*

UNITED STATES MAGISTRATE JUDGE

-18-